IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| ELIZABETH RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 1:15-CV-181-P-BL |
| | § | |
| | § | |
| STAN PARKER, *et al.*, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant Charlotte Stovall's ("Stovall") Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support, filed January 7, 2016. (Doc. 34).[1] After considering this motion and the applicable law, the Court recommends that the motion be granted.

### I. BACKGROUND

Plaintiff Elizabeth Rodriguez filed suit against Defendants Marc Thomas, Stan Parker, and Howard County, Texas ("Thomas," "Parker," and "Howard County," collectively "Defendants") on September 25, 2015, pursuant to 42 U.S.C. §§ 1983 and 1985. Rodriguez claims that she sustained injuries from the excessive use of force during an "unlawful arrest" and "false imprisonment" outside of Coahoma Elementary School on or about November 7, 2013. (Doc. 28, p. 1-2). Thomas is a Howard County Sheriff's Deputy, and Parker is the Howard County Sheriff. (Doc. 1, p. 1). Rodriguez alleges that she went to the school to pick up her granddaughter, but that her granddaughter did not come out of the school at the expected time. Rodriguez claims that she entered the school to retrieve her granddaughter and upon returning to

---

[1] Stovall filed a motion to dismiss Rodriguez's First Amended Complaint on November 6, 2015 (Doc. 16), but Rodriguez amended her complaint on December 17, 2015 (Doc. 28). Stovall then filed the instant motion to dismiss directed toward Rodriguez's Second Amended Complaint. As such, Stovall's first motion to dismiss is moot.

1

the parking area she was assaulted by Thomas. Rodriguez avers that Thomas was angry with her because he told her not to leave her car. She claims that Thomas then "slammed her into the wall with such force that he was able to throw her to the ground as she bounced off of the wall, landing on her belly." (Doc. 1, p. 3). Rodriguez claims that Thomas handcuffed her and dragged her to his patrol vehicle where he released her and she fell on her back. She avers that Thomas placed her under arrest and into the backseat of his police vehicle. Next, Rodriguez advises that Charlotte Stovall, the school principal at Coahoma Elementary School, exited the building and spoke with Thomas. Rodriguez claims that Stovall gestured for Thomas to take Rodriguez out of the patrol vehicle, which he did. Rodriguez states that Stovall told her that she could make all of this go away if she just admitted she was wrong. Rodriguez declares that she refused to admit she had done anything wrong. Rodriguez explains that Stovall then gave a "physical signal" to Thomas who began punching and kicking Rodriguez. She claims that this went on for several minutes with Stovall looking on. Rodriguez relays that she was transported to the jail and then for medical evaluation where she was told that she had suffered a closed head injury, an extremity fracture, a C-spine fracture, several strains, and a trunk contusion. (Doc. 1, p. 3-5).

On October 1, 2015, Rodriguez amended her complaint to include Stovall. (Doc. 8, p. 1). Rodriguez alleged causes of action against Stovall under 42 U.S.C. §§ 1983 and 1985 as well. (Doc. 8, p. 7). On November 5, 2015, Parker moved to dismiss Rodriguez's claims against him under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). (Doc. 15). On the next day, Stovall also moved to dismiss Rodriguez's claims against her citing the same rule as well as several immunity statutes. (Doc. 16). On November 16, 2015, Thomas moved for summary judgment regarding Rodriguez's claims against him as the arresting deputy. (Doc. 20). The gravamen of Thomas's motion is that he was not the deputy that arrested Rodriguez on the date in question.

Thomas included a sworn affidavit and a Texas Department of Public Safety report indicating that he had no involvement with Rodriguez on that date. (Doc. 20).

As a result, Rodriguez filed her second amended complaint on December 17, 2015, naming Howard County Deputy Matt Wynn as a defendant. (Doc. 28). Rodriguez's second amended complaint acknowledges her error in naming Thomas as a defendant and seeks to replace him with Wynn. (Doc. 28, p. 2). Rodriguez also appears to have abandoned her § 1985 claims against all parties as they do not appear in her Second Amended Complaint. (Doc. 28). Subsequently, this Court granted Rodriguez's motion to amend her complaint to add Wynn, recommended that Thomas's motion for summary judgment be granted, and recommended that Parker's motion to dismiss be granted.[2] (Docs. 39, 40. 41).

The Court will now consider Stovall's Motion to Dismiss Rodriguez's Second Amended Complaint. (Doc. 34).

## II. LEGAL STANDARD

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. FED. R. CIV. P. 12(b)(6). When reviewing a 12(b)(6) motion, courts are to accept "all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiffs." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 634 (5th Cir. 2014) (citation omitted). To avoid dismissal on a Rule 12(b)(6) motion, "a plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). "A claim has facial plausibility

---

[2] Rodriguez's original and first amended complaints listed a separate cause of action against Howard County, Texas, but Howard County was not listed in the "parties" section of those pleadings. Rodriguez's second amended complaint appears to excuse Howard County as a party because it is not listed as a party and there is no longer a separate cause of action against it. Hereafter, the Court will assume that Wynn, Parker, and Stovall are the only remaining defendants.

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, federal courts need not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). For a 12(b)(6) motion, the "court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "[The Court's] task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014).

### III. ANALYSIS

Rodriguez argues that Stovall "is responsible for the false arrest of [Rodriguez] and also for directing and encouraging the actions of Deputy Wynn which resulted in her assault." Rodriguez claims that Stovall, acting under color of state law, "directed the false arrest and excessive force used . . . by Deputy Wynn." Finally, Rodriguez avers that it was Stovall's complaints to Wynn that "resulted in [her] detention and/or assault despite the fact that [she] had committed no crime." (Doc. 28, p. 8). Stovall responds that she no authority to direct Wynn's actions as a peace officer and that she cannot be held liable for any actions that Wynn might have taken. Also, Stovall takes issue with Rodriguez's assertion that Stovall, as principal at Coahoma Elementary School, was "in charge of all activities conducted on school property." Stovall contends that state law dictates that she is the "instructional leader of the school," but that she

4

had no authority over Wynn. Finally, Stovall argues that she is entitled to qualified immunity as well as immunity under Texas Education Code § 22.0511 and the Paul D. Coverdell Teacher Protection Act of 2001. (Doc. 34, p. 3-8).

First, the Court takes note of several inconsistencies in Rodriguez's version of events. In her initial recitation of the facts, Rodriguez alleges that she entered the school building to look for her granddaughter and that upon finding her she headed toward the exit. Rodriguez explains that Wynn confronted her near the exit of the school and told her that she was not supposed to leave her vehicle. Rodriguez claims that she tried to go around Wynn to exit the building and it was then that he used physical force to take her into custody. Rodriguez claims that Wynn then dragged her out of the building and placed her in the back of his patrol vehicle. Rodriguez continues, "About this time . . . Rodriguez noticed that [Stovall] and another teacher were present and appeared to be talking to her. Deputy Wynn then rolled down the window about 4 to 6 inches and began to speak to [Rodriguez] about her actions." (Doc. 28, p. 4). But, in her allegations pertaining solely to Stovall, Rodriguez declares that Stovall's complaints to Wynn precipitated the arrest and excessive force. As noted, Rodriguez alleges that Stovall's actions resulted in the detention and that Stovall "directed the false arrest and excessive force." (Doc. 28, p. 8). As pleaded, these two versions of events are irreconcilable. Either Wynn, without Stovall's prompting, placed Rodriguez under arrest for failing to obey his earlier commands and placed her in the back of his patrol vehicle as she alleges or Wynn, at Stovall's direction, placed Rodriguez under arrest for an unstated reason. The discrepancies become evident as Rodriguez claims that Stovall directed Wynn to make the arrest, but earlier claims that she was already under arrest and in the patrol car when she first noticed Stovall. In other words, Stovall cannot direct Wynn to make an arrest that has already been made.[3]

---

[3] Theoretically, Stovall could have made a report to Wynn that caused him to initiate contact with Rodriguez, but

5

It is possible, although entirely unclear, that Rodriguez's allegations of false arrest and excessive force prompted by Stovall's directives to Wynn could be in reference to the time period after Stovall spoke to Rodriguez in the patrol car and allegedly gave a "physical signal" to Wynn. If that is the case, it is evident that Stovall did not "direct the false arrest" as Rodriguez claims. As for the excessive force claims, Stovall makes compelling arguments, without citing authority, that she had no power or duty to control Wynn's actions as a peace officer. (Doc. 34, p. 3-4).

### A. Stovall, as a private citizen, is not liable under § 1983.

The Fifth Circuit Court of Appeals has repeatedly held that private actors are not subject to liability under § 1983 unless they engaged in a conspiracy with state actors to violate a Plaintiff's constitutional rights. *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004); *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008); *Glotfelty v. Karas*, 512 F. App'x 409, 414 (5th Cir. 2013). "For a claimant to successfully press such a suit, [she] 'must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights.'" *Glotfelty*, 512 F. App'x at 414 (quoting *Priester*, 354 F.3d at 420). "Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Id.* (internal quotation marks omitted). Specifically regarding claims of unlawful arrest, the Fifth Circuit has consistently held that where plaintiffs claim that private parties acted under color of law, they must demonstrate "as part of a conspiracy to effect an unlawful arrest . . . the existence of a 'preconceived plan' for the authorities to arrest the person without investigation, 'merely because [she] was designated for arrest by the private party.'" *Glotfelty*, 512 F. App'x at 414-15

---

Rodriguez makes no such allegation in describing her initial contact with Wynn. Instead, Rodriguez maintains that all contact with Wynn prior to her arrest centered on the parking dispute. (Doc. 28, p. 2-5).

(quoting *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1079 (5th Cir. 1985)); *Priester*, 354 F.3d at 420 (a complaint must allege an agreement to commit the illegal act and allege specific facts to show the agreement); *Smith v. Brookshire Bros.*, 519 F.2d 93, 94 (5th Cir. 1975) (a plaintiff must show that the private party had a "customary plan" by which the police would effect detentions like the one then at issue), *cert. denied*, 424 U.S. 915, 96 S. Ct. 1115, 47 L.Ed.2d 320 (1976).

For the sake of this analysis, the Court will temporarily ignore Stovall's position as a school principal and focus on her status as a private citizen. First, Rodriguez alleges that Stovall "directed the false arrest and excessive force" by Wynn and that her complaints encouraged Wynn to detain and assault Rodriguez although she had not committed a crime. (Doc. 28, p. 8). Rodriguez also claims that Stovall "acted willfully, recklessly, or with a conscious flagrant indifference to the rights or safety of [Rodriguez] at the time she instigated the . . . arrest and assault." (Doc. 28, p. 8). Nowhere in her Second Amended Complaint does Rodriguez allege facts that would indicate a "preconceived plan" for Wynn to arrest Rodriguez or anyone else merely because Stovall designated them for arrest. *See Glotfelty*, 512 F. App'x at 414-15.

In Rodriguez's First Amended Complaint, which introduced Stovall as a defendant, she alleges a conspiracy under § 1985(3). The allegations read as follows:

> All Defendants conspired to deny Plaintiff of her civil rights as alleged herein. Pursuant to 42 U.S.C. § 1985(3), all Defendants are liable to Plaintiffs [sic] for conspiring to deprive Plaintiff of her rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.
>
> All of the actions taken by the Defendants have been taken under color or state law and are therefore "state actors" for purposes of imposing liability under 42 U.S.C. § 1983. Furthermore, the actions taken by Defendants have resulted in the denial of the constitutional rights of Plaintiff in that he [sic] has been deprived

7

>of life, liberty, and/or property interests guaranteed by the Fourth Amendment to the United States Constitution.

(Doc. 8, p. 7-8). "These assertions are legal conclusions unsupported by facts and do not plausibly suggest an agreement between the defendants to violate [Rodriguez's] rights." *See Stire v. Watson*, No. CIV.A. 12-2982, 2013 WL 3944423, at *3 (E.D. La. July 30, 2013); *see also Twombly*, 550 U.S. at 557 ("a conclusory allegation of agreement at some unidentified point does not supply facts adequate" to show a conspiracy). Moreover, Rodriguez abandoned her § 1985(3) conspiracy claims when she failed to plead them in her Second Amended Complaint.

Accordingly, Rodriguez has not pleaded any facts that would suggest a preconceived agreement between Stovall and Wynn to arrest Rodriguez and violate her rights simply because Stovall designated her for arrest. *See Glotfelty*, 512 F. App'x at 414-15; *see also Twombly*, 550 U.S. at 557.

### B. Stovall, as a school principal, is entitled to immunity.

Stovall invokes qualified immunity as well as immunity under Texas Education Code § 22.0511 and the Paul D. Coverdell Teacher Protection Act of 2001. (Doc. 34, p. 5-8).

#### 1. Qualified Immunity

Stovall seeks dismissal of Rodriguez's claims against her in her individual capacity pursuant to her invocation of qualified immunity. A government actor may be entitled to qualified immunity relieving her of civil damages liability "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Doe v. Robertson*, 751 F.3d 383, 387 (5th Cir. 2014) (quoting *Reichle v. Howards*, ⸺ U.S. ⸺, 132 S. Ct. 2088, 2093, 182 L. Ed.2d 985 (2012)). The burden is on the plaintiff to establish that the government official is not entitled to qualified immunity, which is evaluated using a two-step process. *Wyatt v. Fletcher,* 718 F.3d 496, 502 (5th Cir. 2013) (holding that a plaintiff must show

(1) "a violation of a clearly established constitutional or statutory right" and (2) that the government official's conduct was objectively unreasonable). A plaintiff "must allege facts specifically focusing on the conduct of [the defendant] which caused his injury." *Wicks v. Mississippi State Emp't Servs.*, 41 F.3d 991, 995 (5th Cir. 1995). This heightened pleading standard requires more than bald allegations and conclusory statements. *Id.* A right is clearly established if "existing precedent [has] placed the statutory or constitutional question *beyond debate.*" *Doe*, 751 F.3d at 387 (emphasis in original) (citation omitted). "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Hernandez ex rel. Hernandez v. Texas Dept. of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004). "Both steps in the qualified immunity analysis are questions of law." *Wyatt*, 718 F.3d at 503. "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (internal quotations marks omitted); *Doe v. Granbury I.S.D.*, 19 F. Supp. 2d 667, 675 (N.D. Tex. 1998).

Here, Stovall argues that her actions did not violate Rodriguez's clearly established rights and were objectively reasonable. (Doc. 34, p. 6). Stovall points out that Rodriguez accuses her of verbal abuse, giving a physical signal to Wynn, and failing to restrain Wynn during his arrest process. Stovall avers that—accepting these allegations as true—verbally berating Rodriguez, giving an unidentified physical signal, and failing to intervene in police business would not give rise to constitutional violations. (Doc. 34, p. 6). Stovall contends that in order to overcome her invocation of qualified immunity, Rodriguez would need to demonstrate that a reasonable principal in Stovall's position would not have believed her actions to be lawful. (Doc. 34, p. 7).

Stovall adds that it would not be objectively reasonable for her to believe that any signal that she gave to Wynn would be obeyed. Moreover, Stovall argues that she had no duty to "stop or restrain" a peace officer from interacting with a citizen that he had previously detained. (Doc. 34, p. 7). As such, Stovall seeks dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Rodriguez responds that Stovall, in her role as school principal, was a state actor when she "directed [Wynn] to detain, arrest or assault [Rodriguez] while on school premises." (Doc. 36, p. 1). Rodriguez, quoting *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002), argues that Stovall was acting under color of law because she engaged in "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law . . . ." Also, Rodriguez clarifies that her claims against Stovall do not stem from vicarious liability, but from Stovall's direct participation in the violation of Rodriguez's constitutional rights. (Doc. 36, p. 5). Finally, Rodriguez claims that she already addressed the issue of Stovall's qualified immunity in her Second Amended Complaint. (Doc. 36, p. 5). However, a thorough review of that complaint reveals that Rodriguez's argument against qualified immunity only discusses her complaints against Wynn. (Doc. 28, p. 9).

Even so, the Court will seek to determine whether Rodriguez sufficiently alleged that Stovall violated her clearly established constitutional rights through objectively unreasonable conduct. *See Wyatt*, 718 F.3d at 502. First, Rodriguez claims that Stovall verbally berated her when she was initially removed from the backseat of the patrol vehicle. (Doc. 28, p. 4). But, "verbal abuse does not give rise to a constitutional violation under 42 U.S.C. § 1983, so any yelling that may have occurred is not actionable." *Wyatt* at 504.

Next, Rodriguez avers that Stovall gave a "physical signal" to Wynn who then proceeded to "physically assault Mrs. Rodriguez by punching her with his closed fists." (Doc. 28, p. 4). Rodriguez declares that this signal precipitated Wynn's alleged use of excessive force and that Wynn was "clearly acting at the behest and under the instruction of Stovall at the time of the assault." (Doc. 28, p. 4). Rodriguez also claims that Stovall made a false complaint to Wynn regarding Rodriguez and, thus, there was no legal basis to request her arrest. (Doc. 36, p. 4). Beyond these conclusory allegations, Rodriguez offers no facts to demonstrate that Stovall exercised any authority over Wynn.

Even still, private citizens may be held liable for directing or requesting law enforcement to make an unlawful detention.[4] *Reicheneder v. Skaggs Drug Ctr.*, 421 F.2d 307, 311 (5th Cir. 1970) (citing Texas cases); *Sanders v. Schulze*, No. 3:15-CV-89-N-BH, 2015 WL 5547630, at *7 (N.D. Tex. Aug. 31, 2015), *report and recommendation adopted*, 2015 WL 5566250 (N.D. Tex. Sept. 21, 2015). Texas courts often refer to this cause of action as "'instigation of false imprisonment.'" *Goodarzi v. Hartzog*, No. CIV.A. H-12-2870, 2013 WL 3110056, at *7 (S.D. Tex. June 14, 2013) (quoting *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 507 (Tex. 2002)). To successfully demonstrate instigation, Rodriguez must show that Stovall "clearly directed or requested the arrest." *See Wal-Mart Stores, Inc.*, 92 S.W.3d at 507 (citing Restatement (Second) of Torts § 45A cmt. c (1965)). The *Restatement* explains that Stovall's conduct must have been equivalent to "Officer, arrest that [woman]!" *See id.* (quoting Restatement (Second) of Torts § 45A cmt. c). "To hold a third party liable for instigating the detention, then, 'the act of arrest [must be] made by the officer, not of his or her own volition, but to carry out the request of the defendant.'" *Id.* (quoting Restatement (Second) of Torts § 45A

---

[4] An unlawful detention is otherwise known as false imprisonment. In Texas, "[t]he essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law." *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002).

11

cmt. c) (alterations in original). Finally, "[a] private citizen who merely reports a crime and identifies the suspect to law enforcement authorities has not requested or directed the suspect's arrest, and will not be liable for instigating a subsequent false imprisonment." *Id.*

In this case, Rodriguez claims that Stovall directed and encouraged Wynn's actions against her. (Doc. 28, p. 8). But, as noted, Rodriguez makes it clear in her First Amended Complaint and her Second Amended Complaint that she was already under arrest and in the back of the patrol car when Stovall first became involved in this action. (Doc. 8, p. 3-4; Doc. 28, p. 4). Rodriguez alleges that Stovall "gestured" to the officer to remove her from the back of the patrol vehicle so that Stovall could talk to her. Next, Rodriguez claims that Stovall tried to get her to admit that she had done something wrong and that she refused. Then, Rodriguez claims that Stovall gave a "physical signal" to Wynn who commenced to beating her before placing her back into the patrol car. (Doc. 28, p. 4).

From the facts pleaded, it is clear that Stovall did not direct Rodriguez's arrest. First and foremost, Rodriguez's own pleadings indicate that she was already under arrest when Stovall first became involved in this action. Second, there is no allegation that Stovall made a statement or gesture that would be equivalent to "Officer, arrest that woman." *See Wal-Mart Stores, Inc.*, 92 S.W.3d at 507. Lastly, Rodriguez avers that Stovall's false complaints prompted her arrest. (Doc. 36, p. 4). However, Rodriguez offers no supporting facts that Stovall ever made any complaints prior to her initial arrest, much less any false complaints. Again, Rodriguez alleges that her initial arrest was for a parking dispute with Wynn and nowhere in her pleadings does she claim that Stovall was involved in that sequence of events. Accordingly, the Court finds that Rodriguez has failed to plead facts that would suggest a plausible case of "instigation of false imprisonment." *See Goodarzi*, 2013 WL 3110056, at *7.

Next, Rodriguez claims that Stovall was responsible for the alleged excessive use of force against her by directing and encouraging Wynn's actions "which resulted in her assault." (Doc. 28, p. 8). Rodriguez seems to imply that Stovall is either liable for assault or under a theory of bystander liability. Bystander liability involves a duty to intervene by police officers when a person's constitutional rights are being violated by another police officer. *See generally Kitchen v. Dall. Cnty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014). In order to demonstrate bystander liability, Rodriguez would need to show that "an officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Id.* The Court is unaware of any cases in this Circuit applying bystander liability to a school principal.[5] As such, the Court finds that if excessive force was used, as alleged, Stovall had no duty to intervene or stop Wynn's actions.

Rodriguez's claim also fails if she seeks to hold Stovall responsible for assault under Texas law. In Texas, the elements of a civil assault claim are identical to those of criminal assault. *Villafranca v. United States*, 587 F.3d 257, 260 (5th Cir. 2009); *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). Under the Texas Penal Code, an assault occurs when a person:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
>
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
>
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

---

[5] In *Smith v. City of Atlanta, Ga.*, No. 1:11-CV-765-TWT, 2013 WL 1189491, at *1 (N.D. Ga. Mar. 21, 2013), the district court initially denied an assistant principal's motion to dismiss the bystander liability claim for unlawful detention. However, the same court later granted summary judgment to the assistant principal by finding that he had no authority to control the police and, thus, no "power to shorten the length of the detention."

TEX. PENAL CODE § 22.01(a). Rodriguez never alleges that Stovall physically touched or threatened her. Instead, Rodriguez maintains that Stovall gave a physical signal after which Wynn began punching her with his closed fists and kicking her after she fell. (Doc. 28, p. 4). However, Rodriguez does not plead enough facts for the Court to infer a sufficient link between these two actions. Rodriguez pleads that Wynn used excessive force in making his initial arrest and escorting her to his patrol vehicle, well before Stovall ever became involved. Specifically, Rodriguez avers that Wynn threw her into a wall, placed his weight on top of her, handcuffed her, hyperextended her arms behind her back, dragged her on concrete, dropped her onto a sidewalk, and put her in the back of his patrol car. (Doc. 28, p. 4). Rodriguez concedes that she was under arrest at this time. (Doc. 28, p. 4). It was only after those actions by Wynn that Rodriguez acknowledges that Stovall appeared. The Court is not persuaded that the excessive force, if any, was prompted by Stovall's physical signal and not Wynn's own prerogative. In other words, Rodriguez does not allege that Stovall ordered the earlier use of force so it stands to reason that she would not need to prompt the subsequent use of force. Finally, Rodriguez's unadorned allegation regarding Stovall's physical signal to Wynn does not include enough facts to persuade the Court that there was a bridge between the two actions.

Accordingly, the Court finds that Stovall in entitled to qualified immunity because Rodriguez fails to plead sufficient facts demonstrating a violation of her clearly established constitutional rights or that Stovall's actions were objectively unreasonable. *See Wyatt*, 718 F.3d at 502.

### 2. Stovall is immune under Texas Education Code § 22.0511.

In the alternative, Stovall argues that she is immune from liability under Texas Education Code § 22.0511. (Doc. 34, p. 7). That section reads as follows:

> A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

TEX. EDUC. CODE § 22.0511. Stovall contends that Rodriguez's allegations are that she was acting under color of state law via her position as principal at the time of the incident. Further, Stovall's argues that, if true, her actions—verbal berating, giving a physical sign, and failing to intervene in official police business—were discretionary. Finally, Stovall points out that this action did not involve the excessive use of force against a student and that she should be granted immunity under this statute. (Doc. 34, p. 7). Rodriguez fails to respond to Stovall's professional immunity claims except to assert that Stovall was acting "under the authority granted her by Coahoma ISD; therefore she is a state actor." (Doc. 36, p. 4).

"Whether one is acting within the scope of his employment depends upon whether the general act from which injury arose was in furtherance of the employer's business and for the accomplishment of the object for which the employee was employed." *Gonzalez v. Grimm*, 353 S.W.3d 270, 273 (Tex. App.—El Paso 2011) (quoting *Chesshir v. Sharp*, 19 S.W.3d 502, 504 (Tex. App.—Amarillo 2000, no pet.)). "In determining whether an act is ministerial or discretionary, we look to the ability of the actor to exercise discretion when performing the act." *Gonzalez v. Grimm*, 353 S.W.3d 270, 274 (Tex. App.—El Paso 2011). "When a policy prescribes an actor's duties with a degree of precision and certainty that leaves nothing to the exercise of the actor's judgment, then the actor's performance of those duties is ministerial." *Id.*

Ministerial duties do not provide immunity under § 22.0511, but discretionary actions can. *See id.*

Undoubtedly part of a principal's duty is to be aware of the activities that occur on her campus, especially those events involving law enforcement. Common sense would dictate that Stovall's response to the scene of arrest is a discretionary act taken within the scope of her employment as a principal. Also, if Stovall berated Rodriguez, gave a physical signal, and failed to intervene in the arrest, then these actions were not ministerial, but rather discretionary decisions that she chose to make in the course of her official duties. Lastly, Rodriguez's claim of excessive force does not involve force used against a student. Therefore, Stovall is entitled to immunity from Rodriguez's claims under Texas Education Code § 22.0511.

**3. Stovall is immune under the Paul D. Coverdell Teacher Protection Act of 2001.**

The Paul D. Coverdell Teacher Protection Act of 2001 ("TPA") was enacted "to provide teachers, principals, and other school professionals the tools they need to undertake reasonable actions to maintain order, discipline, and an appropriate educational environment." 20 U.S.C. § 7942. In order to be entitled to immunity under the TPA, Stovall would need to demonstrate that:

> (1) [she] was acting within the scope of [her] employment or responsibilities to a school or governmental entity;
>
> (2) [her] actions . . . were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school;
>
> (3) . . . [she] was properly licensed, certified, or authorized by the appropriate authorities for the activities or practice involved in the State in which the harm occurred, where the activities were or practice was undertaken within the scope of [her] responsibilities;

16

> (4) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed . . . ; and
>
> (5) the harm was not caused by [her] operating a motor vehicle, vessel, aircraft, or other vehicle . . . .

20 U.S.C. § 7946(a). Stovall explains that Rodriguez pleadings—alleging that Stovall was acting in her duties as principal at Coahoma Elementary School at the time of this incident—satisfy the first element of the TPA. *See* 20 U.S.C. § 7946(a). (Doc. 34, p. 8). Next, the Court has already found that Rodriguez failed to sufficiently allege that Stovall violated any laws or rules while attempting to help control this situation on her campus. As such, the second element of the TPA is satisfied. *See* 20 U.S.C. § 7946(a). There are no allegations that Stovall was not properly licensed or that she was operating any kind of vehicle during this event. Elements three and five of the TPA are met. *See* 20 U.S.C. § 7946(a). Finally, Stovall argues that Rodriguez has not pleaded a factual basis that she acted willfully, recklessly, or with conscious indifference to her rights or safety. (Doc. 34, p. 8). Based on the Court's prior analysis, it appears that there is no factual basis to support Rodriguez's allegations of misconduct by Stovall. *See* 20 U.S.C. § 7946(a).

Stovall is entitled to immunity under the TPA. *See id.* Also, the Court will not address Rodriguez's earlier conspiracy allegations as she appears to have abandoned them in her Second Amended Complaint. Accordingly, the Court recommends that all remaining claims against Stovall be dismissed.

### C. Rodriguez should not be granted leave to amend her complaint a third time.

In response to Stovall's motion to dismiss, Rodriguez argues that she should be granted leave to amend her complaint if the Court finds that she has not sufficiently pleaded enough facts

to state a plausible claim for relief. (Doc. 36, p. 5). Stovall counters that Rodriguez should not be granted leave to amend her complaint a third time because she has had "ample opportunity to state a claim for relief." (Doc. 38, p. 3). The Court agrees with Stovall. After considering factors such as "undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party, and futility of amendment," a court can deny a request for leave to amend. *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (emphasis added). In *Herrmann*, as here, the court had previously allowed two amendments to the original complaint prior to holding that the plaintiffs still had not asserted a plausible claim. *See id.* The Fifth Circuit held that the district court in *Herrmann* did not abuse its discretion in denying the amendment because the plaintiffs had been given "ample opportunity to plead their . . . claims." *Id.* Here, Rodriguez filed her original complaint, which did not include allegations against Stovall; her First Amended Complaint, which contained § 1983 allegations virtually identical to those in the Second Amended Complaint; and her Second Amended Complaint, after she had ample notice of the pleading deficiencies alleged by Stovall. (Docs. 1, 8, 16, 28). Even still, Rodriguez failed to state plausible claims for relief against Stovall.

Accordingly, the Court recommends that Rodriguez's request to amend her original complaint a third time be denied. *See Herrmann*, 302 F.3d at 566.

### IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant Charlotte Stovall's Motion to Dismiss (Doc. 34) be **GRANTED**.

Also, the Court **RECOMMENDS** that Stovall's first Motion to Dismiss (Doc. 16) be **DENIED** as **MOOT**. Finally, the Court **RECOMMENDS** that Rodriguez's request to amend her complaint be **DENIED**.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 631(b)(1) (extending time to file objections from ten to fourteen days), *as recognized in ACS Recovery Servs. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012).

**SO ORDERED**.

Dated April 27, 2016.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**